UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
ANDREA BARRON, on behalf of herself :
and all others similarly situated, :
: 09 Civ. 4471 (TPG)
Plaintiff, :
: **OPINION**
- against - :
:
:
ROMAN IGOLNIKOV, SHELDON S. :
GORDON, MATTHEW STADTMAUER, :
UNION BANCAIRE PRIVÉE, UNION :
BANCAIRE PRIVÉE ASSET :
MANAGEMENT LLC, UBPI HOLDINGS, :
INC., DANIEL DE PICCIOTTO, MICHAEL :
DE PICCIOTTO, GUY DE PICCIOTTO, :
and CHRISTOPHE BERNARD, :
:
Defendants. :
------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/10

Andrea Barron brings this putative class action under Fed. R. Civ. P. 23(a) and (b)(3) seeking to hold Union Baincaire Privée Asset Management, LLC ("UBPAM"), its Swiss parent Union Bancaire Privée ("UBP"), and several of their officers and directors liable for all losses incurred by 11 "fund of funds" ("UBP Funds") resulting from Bernard Madoff's massive Ponzi scheme. Defendants are Roman Igolnikov, Sheldon S. Gordon, Matthew Stadtmauer, UBP, UBPAM, UBPI Holdings, Inc., Daniel de Picciotto, Michael de Picciotto, Guy de Picciotto, and Christophe Bernard. Plaintiff asserts common law claims for breach of

1

fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, and unjust enrichment.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[1] Plaintiff opposes. The motion is granted.

## BACKGROUND

The Complaint

Except where otherwise indicated, the following facts are taken from the complaint. For the purpose of this motion, plaintiff's allegations are assumed to be true.

The basic facts surrounding Madoff's fraudulent Ponzi scheme are well-known. Madoff told his customers that he was investing their assets through a strategy called "split-strike conversion," which involved the supposed purchase and sale of stocks in the S&P 100 Index as well as options on that index. Madoff sent account statements and trade tickets to his customers purporting to reflect this trading.

On December 11, 2008, news broke that Madoff had been operating an enormous Ponzi scheme for nearly 20 years. Rather than using his customers' money to purchase publicly traded securities, Madoff used investments from new customers to pay returns to other

---

[1] UBP, a foreign corporation, separately filed a motion to quash service of process under Fed. R. Civ. P. 12(b)(5) on June 9, 2009. Notwithstanding its challenge to the sufficiency of service, UBP indicated its intention to join this motion to dismiss.

2

customers. In fact, he never purchased a single security. And the account statements and trade tickets that Madoff had been sending to customers were complete fabrications. Upon the revelation of this fraud, the U.S. Attorney for the Southern District of New York charged Madoff with violations of the federal securities laws. On March 13, 2009, Madoff pleaded guilty to these charges. Bernard Madoff has since been sentenced to 150 years in prison for his crimes. While the conviction is not pled in this complaint, which was filed about two months before the sentencing, the court takes judicial notice of this fact as a matter of public record extensively and globally covered in news.

On April 6, 2009, the New York Attorney General brought civil fraud charges under New York's Martin Act against hedge fund operator J. Ezra Merkin based on his feeder funds' role in supplying money to Madoff. The Attorney General alleges that Merkin steered his clients' money to Madoff without permission in exchange for management and incentive fees funds and ignored glaring "red flags" related to Madoff's investments. The court takes judicial notice of the fact that Merkin managed several feeder funds with ties to Madoff, including Ascot Fund Ltd.

Plaintiff brings this action on behalf of all investors who acquired and/or held limited partnership interests or other investment interests in the UBP Funds as of December 11, 2008. The UBP Funds are "funds of funds," which invested with Madoff indirectly by allocating a portion of

3

their assets to four feeder funds, including Ascot Fund Ltd., which had direct accounts with Madoff and invested substantially all of their assets with him.  The complaint refers to 11 separate UBP Funds managed by UBPAM or UBP that plaintiff purports to represent:  Selectinvest ARV LP, Selectinvest ARV II Ltd., Selectinvest Alternative Balanced Fund Ltd., UBP Multi-strategy Alpha Fund, Dinvest-Total Return, Dinvest-Concentrated Opportunities, Dinvest-Select I, Dinvest-Select II, Dinvest-Select III, Dinvest-Concentrated Opportunities III Equity, and Trendsquare I.  Plaintiff alleges that the UBP Funds' investments in Madoff feeder funds ranged from 2.31% to 6.92% of total assets.  As a result of these investments, the UBP Funds lost a portion of their value upon revelation of Madoff's extensive securities fraud.  On December 17, 2008, UBP disclosed that investors in the UBP Funds in fact lost $700 million attributable to investments with Madoff.

Back in 2007, the research division of UBP apparently discovered and questioned some of the "red flags" associated with Madoff.  Plaintiffs allege that defendants nonetheless failed to warn their clients against investing with Madoff and instead continued to funnel money to Madoff-related feeder funds while collecting management fees from its investors.  And defendants allegedly failed to provide proper account statements that accurately reflected plaintiff's and the class's account values.

While the complaint does not identify which of the 11 UBP Funds plaintiff invested in, defendants believe, based on a review of their

4

records, that she invested in a single, domestic fund—Selectinvest ARV LP—managed by UBPAM out of its New York headquarters.[2] Defendants have provided the court with a copy of the limited partnership agreement for Selectinvest ARV LP, which contains an exculpation provision stating as follows:

> To the fullest extent permitted by law, the General Partner [an affiliate of UBPAM], its Affiliates and any of their respective partners, directors, officers, employees or shareholders shall not be liable to the Partnership or any other Partner for (i) any act or omission by the General Partner in connection with the conduct of the business of the Partnership that is determined by the General partner in good faith to be in or not opposed to the best interests of the Partnership, unless the act or omission constitutes fraud, willful misconduct or gross negligence . . .

The limited partnership agreement also contains a provision specifying the application of Delaware law.

The other 10 funds comprising the UBP Funds have separate investors or shareholders, boards of directors, and governing documents. According to defendants, these other funds are domiciled outside the United States, in either the Cayman Islands or Luxembourg.

Plaintiff's Claims

Plaintiff asserts four state-law claims in this diversity class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) & (C): (1) breach of fiduciary duty against all defendants, (2) aiding and abetting breach of fiduciary duty against UBP, Daniel de Picciotto, Guy de Picciotto, Michael de Piciotto, Christophe Bernard, Sheldon S. Gordon,

---

[2] Defendants assert that plaintiff invested in this fund under another name, Andrea Brenninkmeyer. Plaintiff does not contest this.

Roman Igolnikov, and Matthew Stadtmauer, (3) gross negligence against all defendants, and (4) unjust enrichment against UBP and UBPAM.

Plaintiff seeks to recover money damages from all defendants.

Standard On A Motion To Dismiss

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint need not supply "detailed factual allegations," it must consist of more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible," the complaint must be dismissed. Id. at 570.

**DISCUSSION**

Defendants move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim on the grounds that (1)

the action is preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 78bb(f), 77p(b); (2) the action is preempted by the Martin Act, N.Y. Gen. Bus. Law § 352 *et seq.*; (3) plaintiff lacks standing under Article III of the United States Constitution to assert claims on behalf of investors in the UBP Funds in which she did not invest; and (4) plaintiff's claims are barred by the exculpation provision in the limited partnership agreement of the Selectinvest ARV LP fund.

SLUSA Preemption

Congress enacted SLUSA in 1998 in response to concerns that state-law class actions were being utilized to circumvent the heightened pleading requirements for securities fraud lawsuits under the Private Securities Litigation Reform Act of 1995.  Indeed, SLUSA's purpose is to ensure that federal courts remain "the exclusive venue of, and federal law the exclusive source of, certain class actions alleging securities claims." Dacey v. Morgan Stanley Dean Witter & Co., 263 F. Supp. 2d 706, 709 (S.D.N.Y. 2003).  To achieve this aim, SLUSA imposes certain limitations on putative state-law class actions:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §§ 78bb(f)(1), 77p(b). Thus, SLUSA mandates dismissal when the following four-part test is met: (1) the ... suit must be a "covered class action"; (2) the action must be based on state or local law; (3) the action must concern a "covered security"[3]; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative device or contrivance "in connection with the purchase or sale" of that security. See Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 690-91 (S.D.N.Y. 2006). SLUSA's preemptive reach extends to complaints framed in terms of causes of action other than fraud. See In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2006); In re Oppenheimer Funds Fess Litig., 419 F. Supp. 2d 593, 596 (S.D.N.Y. 2006).

It is undisputed that this action a "covered class action" within the meaning of SLUSA and that the complaint contains no claims brought under federal law. At issue is whether plaintiff has alleged a "misrepresentation or omission . . . in connection with the purchase or sale of a covered security."

The Supreme Court has instructed that SLUSA's operative language must be read broadly to cover not only purchasers and sellers of covered securities but also claims where the fraud alleged coincides with a covered securities transaction by someone else. See Merrill

---

[3] A "covered security" includes any security that is listed or authorized for listing on the New York Stock Exchange or another national exchange. See 15 U.S.C. §§ 77r(b) and 78bb(f)(5)(E).

8

Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 85 (2006). The requisite showing is deception in connection with the purchase or sale of any security, not deception practiced against a particular purchaser or seller. See id. at 85. This "purchase or sale" requirement is to be "construed not technically and restrictively, but flexibly." S.E.C. v. Zandford, 535 U.S. 813, 819 (2002).

Most importantly, it is not necessary that the purchase or sale actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit. See, e.g., Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1352 (11th Cir. 2008) (finding SLUSA precluded action seeking to hold defendant liable for fraud where third-party investment manager stole investors' money rather than purchasing securities); Falkowski v. Imation Corp., 309 F.3d 1123, 1129-30 (9th Cir. 2002) (preempting class action under SLUSA relating to unexercised stock options because "if a person contracts to sell a security, that contract is a 'sale' even if the same is never consummated"). And SLUSA has precluded state-law claims where defendants placed plaintiffs' retirement proceeds into a collective fund that invested with Madoff and BMIS and subsequently ignored several "red flags" that should have alerted them to Madoff's Ponzi scheme. See Levinson v. PSCC Servs., Inc., No. 3:09-CV-00269 (PCD), 2009 WL 5184363, at **11-12 (D. Conn. Dec. 23, 2009); see also Schnorr v. Schubert, No. CIV-05-303-M, 2005 WL 2019878, at *5 (W.D. Okla. Aug.

18, 2005) (preempting claims under SLUSA where defendant engaged in a Ponzi scheme by promising to invest plaintiff's and the putative class's money in nationally listed and traded securities but never actually executed any trades).

Here, Madoff told investors that he would purchase and sell securities in the S&P 100 Index but never consummated any trades. Central to his fraud, Madoff used prices from the public markets on the trade documentation he sent to customers. In light of the Supreme Court's command that SLUSA be construed expansively, it is enough that this fraudulent scheme was in connection with the trading in the nationally listed securities in which Madoff claimed to be engaged. It is not essential that Madoff actually performed any trades or acquired any securities. And while plaintiff and members of the putative class purchased limited partnership interests in the UBP Funds -- which in turn invested in covered securities -- rather than covered securities directly from Madoff, SLUSA preemption is justified because the securities transaction need not have been performed by plaintiff. Rather, it is only necessary to demonstrate deception in connection with the purchase or sale of a covered security, not the deception of plaintiff herself.

The court concludes that plaintiff's various claims allege "a misrepresentation or omission . . . in connection with the purchase or

sale of a covered security" within the meaning of SLUSA. They are alleged as state law claims, but are preempted by SLUSA.

Martin Act Preemption

Apart from the bar of SLUSA, plaintiff's claims are preempted by the Martin Act, N.Y. Gen. Bus. Law §§ 352 *et seq.* This statute, commonly known as the Martin Act, "prohibits various fraudulent and deceitful practices in the distribution, exchange, sale, and purchase of securities but does not require proof of intent to defraud or scienter." Kassover v. UBS AG, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008).

New York courts construe the Martin Act liberally and have held that the statute vests the New York Attorney General with the sole authority to prosecute state-law securities violations sounding in fraud. See Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001); First Energy Leasing Corp. v. Attorney-General, 68 N.Y.2d 59, 64 (1986). There is no implied private right of action for any claim covered by the Martin Act. See CPC Int'l, Inc. v. McKesson Corp., 70 N.Y.2d 268, 275 (1987).

Courts routinely dismiss common-law securities claims under the Martin Act based on conduct that is "within or from" New York sounding in fraud or deception that do not require pleading or proof or intent. See Owens v. Gaffken & Barriger Fund, LLC, No. 08 Civ. 8414 (PKC), 2009 WL 3073338, at *13 (S.D.N.Y. Sept. 21, 2009). Limited partnership interests are considered securities for purposes of the Martin Act. See

11

N.Y. Gen. Bus. Law § 352(1); Mayer v. Oil Field Sys. Corp., 721 F.2d 59, 65 (2d Cir. 1993). And a transaction qualifies as "within or from" New York for purposes of the Martin Act if a plaintiff alleges that a substantial portion of the events giving rise to a claim occurred in New York. See, e.g., Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120 (LTS)(THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (applying Martin Act where complaint alleged proper venue in New York based on substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York).

Plaintiff's claims plainly fall within the scope of the Martin Act. First, plaintiff's and the class's claims involve a security within the meaning of the Act, based on their ownership of limited partnership interests in the UBP Funds. Second, the Martin Act's geographic prong is easily satisfied. Substantial acts in furtherance of the alleged wrongdoing indisputably occurred "within or from" New York, and plaintiff is a New York resident, Madoff's fraud was centered in New York, and the Selectinvest ARV LP fund in which plaintiff invested is a domestic fund managed by UBPAM from its New York headquarters. As such, the securities at issue here have a significant nexus with New York.

Most importantly, the factual allegations here greatly resemble those in In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405 (S.D.N.Y. 2007), where the court dismissed plaintiff's breach of fiduciary duty

claim against its investment advisor under the Martin Act for allegedly conducting inadequate diligence before recommending investment in a hedge fund, which ultimately was revealed to be a Ponzi scheme. See id. at 421. Similarly, the core of the complaint here is the allegation that defendants failed to perform adequate due diligence before investing the UBP Funds' assets with Madoff, whose operations were later exposed to be a fraudulent Ponzi scheme. Moreover, the fact that the New York Attorney General has brought claims under the Martin Act against Ascot Fund Ltd., one of the feeder funds through which plaintiff had exposure to Madoff, only underscores the appropriateness of Martin Act-preemption here.

Plaintiff's claims are precluded by the Martin Act.

## CONCLUSION

Defendants' motion to dismiss is granted, and the case is dismissed in its entirety.

Dated: New York, New York
       March 10, 2010

SO ORDERED

_____
Thomas P. Griesa
U.S.D.J.

13